FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 18, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

ROY A.,[1]

              Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

No. 4:19-cv-05169-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 16, 17

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

2  motion, ECF No. 16, and denies Defendant's motion, ECF No. 17.

3                                        **JURISDICTION**

4          The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

5                                **STANDARD OF REVIEW**

6          A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11 reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12 (quotation and citation omitted).  Stated differently, substantial evidence equates to

13 "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14 citation omitted).  In determining whether the standard has been satisfied, a

15 reviewing court must consider the entire record as a whole rather than searching

16 for supporting evidence in isolation. *Id.*

17         In reviewing a denial of benefits, a district court may not substitute its

18 judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20 rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. § 404.1535(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to

1    disability.  *Id*.  The claimant has the burden of showing that drug and alcohol

2    addiction is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

3         Social Security Ruling ("SSR") 13-2p provides guidance for evaluating

4    whether a claimant's substance use is material to the disability determination.  SSR

5    13-2p, 2013 WL 621536, at *3 (Feb. 20, 2013).  It instructs adjudicators to "apply

6    the appropriate sequential evaluation process twice.  First, apply the sequential

7    process to show how the claimant is disabled.  Then, apply the sequential

8    evaluation process a second time to document materiality[.]"  *Id*. at *6.  "To

9    support a finding that DAA is material [in the setting of a co-occurring mental

10   disorder,] [the Commissioner] must have evidence in the case record that

11   establishes that a claimant with a co-occurring mental disorder(s) would not be

12   disabled in the absence of DAA."  *Id*. at *9.

13                              **ALJ'S FINDINGS**

14        On August 26, 2015, Plaintiff applied for Title II disability insurance

15   benefits alleging a disability onset date of July 15, 2014.  Tr. 17, 70, 157-58.  The

16   application was denied initially, and on reconsideration.  Tr. 89-91, 93-95.

17   Plaintiff appeared before an administrative law judge (ALJ) on December 11,

18   2017.  Tr. 33-55.  On March 9, 2018, the ALJ denied Plaintiff's claim.  Tr. 14-32.

19        At step one of the sequential evaluation process, the ALJ found Plaintiff,

20   who met the insured status requirements through September 30, 2018, has not

ORDER - 7

engaged in substantial gainful activity since July 15, 2014. Tr. 19. At step two, the ALJ found that Plaintiff has the following severe impairment: alcohol use disorder. Tr. 19. The ALJ also determined Plaintiff has the following non-severe medically determinable impairments: obesity; hypertension; hepatitis C; right foot injury; left wrist injury; and hearing loss. Tr. 20. The ALJ found Plaintiff's mental impairments were not medically determinable impairments. Tr. 21. The ALJ then dispensed with the remainder of the five-step sequential evaluation concluding it was "unnecessary" and "duplicative":

> Even if I were to pursue the five-step sequential evaluation with the effects of substance abuse included, and find him disabled considering the effects of substance abuse, I would have to find drug and/or alcohol abuse (DAA) material under [Social Security Ruling] 13-2p because, without DAA, the claimant has no severe medically determinable impairment. I dispense with this unnecessary, duplicative analysis.

Tr. 26. The ALJ found that absent Plaintiff's alcohol use, Plaintiff has no severe impairments or work limitations. Tr. 22. The ALJ then concluded that because substance abuse is a material contributing factor to the determination of disability, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date of application through the date of the decision. Tr. 26.

On April 24, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

    1. Whether the ALJ properly evaluated the medical opinion evidence;

    2. Whether the ALJ conducted a proper step-two analysis;

    3. Whether the ALJ conducted a proper step-three analysis;

    4. Whether the ALJ properly evaluated Plaintiff's symptom claims;

    5. Whether the ALJ failed to meet his duty to develop the record;

    6. Whether the ALJ conducted a proper step-four analysis; and

    7. Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 5-6.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends in performing the step two evaluation of Plaintiff's co-occurring mental impairments, the ALJ erred in rejecting the diagnoses and weighing the medical opinions of N. K. Marks, Ph.D., Holly Petaja, Ph.D., John Robinson, Ph.D., Rita Flanagan, Ph.D., and Deborah Rogers, ARNP. ECF No. 16 at 8-15.

ORDER - 9

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

ORDER - 10

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1513 (2013).[2]  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as nurse practitioners.  20 C.F.R. §§ 404.1513(d) (2013).[3]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

*1.  Summary of Psychological Medical Opinion Evidence*

a.    Dr. Robinson – Provisional Conclusion, October 1, 2015

---

[2] The current regulation that defines acceptable medical sources is found at 20 C.F.R. § 404.1502 for claims filed after March 27, 2017.  The Court applies the regulation applicable to Plaintiff's claim filed on August 26, 2015.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 404.1502c for claims filed after March 27, 2017.  The Court applies the regulation applicable to Plaintiff's claim.

1    On October 1, 2015, Plaintiff was referred to Dr. Marks for a consultative

2 evaluation after Dr. Robinson, the state agency reviewing psychologist, issued a

3 provisional conclusion, Tr. 308-09, stating that the medical evidence of record to

4 date did not establish that the absence of DAA "would be sufficient to render him

5 work-worthy." Tr. 308. Dr. Robinson recommended a "full-boat [c]omplex

6 [p]sych [consultative examination]" to assist in making the determination whether

7 Plaintiff was either:

8       Too sick to work because of alcohol/drug addiction, but could work if [clean
        and sober], and with increasing mental recovery with longer time [clean and
9       sober]
        [versus]
10      At this point, absence of drug/alcohol would be insufficient to restore to
        work-worthy status, and functional comprise, even if brought on by DA&A
11      would not diminish sufficiently to support simple, practical work, with only
        minimal social demands (like roofing) but at [full-time]/competitive level.
12
Tr. 309.

13              b.      Dr. Marks – November 4, 2015

14    In late October 2015, Dr. Marks, a psychological consultative examiner,

15 performed a records review, psychodiagnostics assessment, clinical interview, and

16 five different psychometric tests. Tr. 310-17 (evaluation signed on November 4,

17 2015). Dr. Marks diagnosed Plaintiff according to the Diagnostic and Statistical

18

19

20

Manual of Mental Disorders, fifth edition (DSM-V)[4] established by the American

Psychiatric Association as suffering from: generalized anxiety disorder; major

depressive disorder – moderate; social anxiety disorder; alcohol use; opioid use

disorder/by history in remission; amphetamine use disorder/by history in

remission; and attention deficit hyperactivity disorder, primarily inattentive type by

history and by presentation.  Tr. 317 (listing "DSM V Diagnoses").  Dr. Marks

assessed severe limitations in Plaintiff's ability to work, such that Plaintiff would

have: "extreme difficulty interfacing with co-workers, supervisors and especially

the general public if placed in an employment position"; "trouble sustaining

concentration and focus"; and "difficulty maintaining adequate effort, persistence

and pace on any jobs."  Tr. 317.  Dr. Marks also noted Plaintiff is a "very anxious

person with poor concentration" and impaired memory.  Tr. 317.  She concluded

that Plaintiff's drinking was preventing him from hepatitis treatment and he needed

_____

[4] The Diagnostic and Statistical Manual of Mental Disorders, also known as the

"DSM," is "a classification of mental disorders with associated criteria" that is "a

standard reference for clinical practice in the mental health field."  *See* Am.

Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, Preface

(5th ed. 2013), *available at* http://dsm.psychiatryonline.org (last visited

8/17/2020).

ORDER - 13

1    "coping skills to help remain abstinent."  Tr. 317.  She recommended he become

2    involved in a dual diagnosis program.  *Id.*

3                    c.        Dr. Robinson – November 10, 2015

4            On November 10, 2015, Dr. Robinson reviewed the record as part of the

5    initial disability determination and opined Plaintiff had severe affective disorders

6    and anxiety disorders in addition to DAA.  Tr. 60.  He concluded Plaintiff was

7    moderately limited in his ability to: 1) understand and remember detailed

8    instructions; 2) ability to carry out detailed instructions; 3) maintain attention and

9    concentration for extended periods; 4) work in coordination with or in proximity to

10    others without being distracted by them; 5) complete a normal workday and

11    workweek without interruptions from psychologically based symptoms and to

12    perform at a consistent pace without unreasonable number and length of rest

13    periods; 6) interact appropriately with the general public; 7) accept instructions and

14    respond appropriately to criticism from supervisors; 8) get along with coworkers or

15    peers without distracting them or exhibiting behavioral extremes; 9) respond

16    appropriately to changes in the work setting; and 10) travel in unfamiliar places or

17    use public transportation.  Tr. 64-66.

18                    d.        Dr. Flanagan – February 15, 2016

19            On February 15, 2016, Dr. Flanagan reviewed Plaintiff's medical records

20    and rendered a mental RFC assessment as part of the disability determination on

ORDER - 14

reconsideration.  Tr. 75-77; 80-83.  Dr. Flanagan concluded that in addition to

substance addiction disorders, Plaintiff had severe medically determinable

psychological impairments including affective disorders and anxiety disorders.  Tr.

76.  Dr. Flanagan also opined the same mental limitations as Dr. Robinson.  Tr. 80-

83.  She noted that Plaintiff "exacerbated his condition severely with DA&A, but is

currently in early sobriety, which temporarily makes his mood and anxiety worse

due to dysphoria of early sobriety."  Tr. 77.

    e. ARNP Rogers – March 18, 2016

  On March 18, 2016, Deborah Rogers, ARNP, Plaintiff's primary care

provider since February 2015, completed a physical function evaluation, which

also reflected Plaintiff's mental health impairments.  Tr. 371-73.  As to his mental

health, ARNP Rogers noted the prognosis for Plaintiff's alcoholism recovery was

"guarded", and that Plaintiff had severe (defined as the inability to perform one or

more basic work activities) depression, anxiety, and social anxiety, as well as

marked memory problems.  Tr. 372.  She noted Plaintiff's impairments were the

result of alcohol use within the last 60 days, but that his impairments would be

expected to persist following 60 days of sobriety.  Tr. 373.  The report also

indicated Plaintiff needed treatment and was in a dual diagnosis treatment program

at Lourdes Counseling Center.  *Id.*

ORDER - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

         f.        Dr. Marks – April 9, 2016

         Dr. Marks evaluated Plaintiff a second time in April 2016, Tr. 374-80,

during one of two undisputed periods of sobriety found by the ALJ.  Tr. 20 (noting

two periods of sobriety from January to April 2016 and from March to June 2017).

Dr. Marks noted that Plaintiff had attended Alcoholics Anonymous, taken

naltrexone to curb cravings, and remained clean and sober long enough to

complete the 3-month hepatitis C treatment with no reported lapses.  Tr. 375.  Dr.

Marks identified the following "DSM-5" diagnoses: unspecified anxiety disorder,

unspecified depressive disorder, unspecified alcohol-related disorder, in remission,

and unspecified opioid-related disorder, in remission.  Tr. 377.  Dr. Marks assessed

marked limitations in five areas: the ability to understand, remember, and persist in

tasks by following detailed instructions; the ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision; the ability to learn new tasks; and the

ability to set realistic goals and plan independently.  Tr. 377.  Dr. Marks assessed

moderate limitations in seven other basic work activities.  Tr. 377.  Dr. Marks

ORDER - 16

found the impairments were not the result of drug use within the past 60 days and would persist following 60 days of sobriety.  Tr. 378.

g.    Dr. Petaja – April 11, 2017

On April 11, 2017, Dr. Petaja conducted a medical evidence review, including a review of Dr. Marks' 2016 psychological evaluation.  Tr. 381.  Dr. Petaja noted the anxiety disorder, depressive disorder, alcohol-related disorder, and opioid-related disorder, in remission, "are supported by the medical evidence."  Tr. 381.  Dr. Petaja concluded the severity and functional limitations (presumably opined by Dr. Marks in 2016) were supported by the available medical evidence. *Id.*; Tr. 25 (noting Dr. Petaja adopted Dr. Marks' findings).  Dr. Petaja also indicated Plaintiff was not primarily impaired due to substance abuse or chemical dependency and that Plaintiff was "currently clean and sober."  *Id.*  She opined Plaintiff's impairment onset date of April 7, 2016 was supported by the available medical evidence.  *Id.*

h.    ARNP Rogers – October 23, 2017

On October 23, 2017, ARNP Rogers completed a medical report.  Tr. 449-51.  ARNP Rogers listed diagnoses of abnormal liver function, anxiety, depression, and hepatic encephalopathy.  She indicated Plaintiff has abnormal liver enzymes, fatigue, memory difficulties, and low cognition.  ARNP Rogers opined Plaintiff was "low functioning," he was likely to miss four or more days per month of work,

ORDER - 17

he needs to lie down during the day, and his overall work level was sedentary.  Tr. 449-50.  She noted Plaintiff's prognoses was "guarded," as he has "made a lot of progress," but he has "significant impairment long term."  Tr. 451.

<blockquote>i.    Donna Veraldi, Ph.D.</blockquote>

On December 11, 2017, Dr. Veraldi, the testifying medical expert, opined that besides alcohol use disorder, Plaintiff's additional mental health diagnoses included depression and generalized anxiety disorder.  Tr. 40-41.  She testified that cessation of alcohol alone did not control Plaintiff's mental health symptoms as Plaintiff had required treatment for and had experienced symptoms of these conditions while incarcerated and during periods of sobriety.  Tr. 40-42.  Though Dr. Veraldi acknowledged that she could not add a diagnosis, Tr. 43-44, she also testified the record raised a "huge question" as to whether Plaintiff has a neurocognitive disorder that could be permanent because Plaintiff did not do "particularly well on his mental status exam," "[h]is cognitive processing is slow," and "it shows significant response delay."  Tr. 39.

2.  *ALJ's Evaluation of Dr. Marks' Opinions*

The ALJ assigned "very little weight" to both of Dr. Marks' opinions. Because Dr. Marks' opinions were contradicted, in part, by the opinion of the testifying medical expert, Dr. Veraldi, Tr. 38-45, the ALJ was required to provide

ORDER - 18

1  specific and legitimate reasons for discounting Dr. Marks' opinions.  *See Bayliss*,

2  427 F.3d at 1216.

3              a.    Dr. Marks' November 2015 Opinion

4       The ALJ rejected Dr. Marks' November 2015 opinion concluding it was

5  based upon "facially invalid" diagnoses made "without excluding the effect of

6  alcohol."  Tr. 24.  The ALJ explained:

> Dr. Marks did not make or attempt to make conclusions regarding the effect
> of the claimant's alcohol abuse on these test scores and underlying
> diagnoses.  As explained above, the psychological diagnoses made without
> excluding the effect of alcohol use are facially invalid per the DOT,[5] as
> intimated by Dr. Veraldi.

10  Tr. 24.

11      The Social Security regulations "give more weight to opinions that are

12  explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ

13  need not accept the opinion of any physician, including a treating physician, if that

14  opinion is brief, conclusory and inadequately supported by clinical findings."

15  *Bray*, 554 at 1228.  Moreover, an ALJ may discount a medical opinion that does

16  not consider a claimant's ongoing substance abuse.  *Cothrell v. Berryhill*, 742 Fed.

17  App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion).

---

19  [5] The ALJ's reference to the "DOT" (Dictionary of Occupational Titles) instead of

20  the DSM appears to be a typographical error.

ORDER - 19

1    Although the ALJ did not quote or include the referenced DSM-V criteria in

2    the record, the Court is generally aware the DSM-V criteria for diagnosis of major

3    categories of psychological disorders includes exclusion criterion that symptoms

4    are "not attributable to the physiological effects of a substance," such as a drug of

5    abuse.  *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental

6    Disorders (5th ed. 2013), *available at* http://dsm.psychiatryonline.org (last visited

7    6/25/2020).  Mental health professionals are experts and are presumed to be

8    knowledgeable about the DSM requirements applicable to their practice and to

9    have taken them into account in assessing a diagnosis.  One challenge for

10   psychiatric diagnosis is posed by patients who experience symptoms during

11   episodes of current or recent substance use.  Plaintiff was referred for the

12   consultative examination with Dr. Marks to address precisely this challenge posed

13   by the record, which was identified by Dr. Robinson.  Tr. 309.  Dr. Marks' opinion

14   concluded the DSM-V diagnostic criteria for multiple co-occurring mental health

15   disorders, including alcohol use disorder, were met.  Tr. 317.  Had Dr. Marks

16   lacked sufficient information to make a diagnosis, such a conclusion would have

17   been indicated.

18   Contrary to the ALJ's finding, Dr. Veraldi did not "intimate" Dr. Marks'

19   diagnoses were "invalid," nor did she testify that "at least six months of sobriety is

20   necessary for effects of alcohol abuse to subside such that proper diagnoses of

ORDER - 20

other impairments could be made." Tr. 21.  Dr. Veraldi in fact testified the record

supported additional co-occurring mental health diagnoses besides alcohol use

disorder, including depression and generalized anxiety disorder.  Tr. 40-41.  She

testified that cessation of alcohol alone did not control Plaintiff's mental health

symptoms as Plaintiff had required treatment for and had experienced symptoms of

these conditions while incarcerated and during periods of sobriety.  Tr. 40-42.

During the hearing, the ALJ inquired: "How long, in your opinion, would he have

to be sober in order to get a picture of how he is psychologically without the

alcohol." Tr. 41 (emphasis).  Dr. Veraldi responded that there are "various

thoughts about that," but "three to six month[] range" would give an "estimate

of . . . how well he's doing," and that "six months . . . cleared his system." Tr. 41.

The ALJ proceeded to advise Dr. Veraldi of the ALJ's understanding of the DSM-

V:

> ALJ:  So diagnostically, you know, my understanding is that the DSM 5
> requires *us* to exclude the substance use as a cause of the symptoms before
> you can make a diagnosis.  Is it possible to do that in this case?"
> Veraldi: I don't think I can.
> ALJ: Okay.  So the anxiety and the depression seem pretty tied to the
> alcohol use?
> Veraldi: At least indistinguishable from, yes.

Tr. 42 (emphasis added).

As Dr. Veraldi did not testify that Dr. Marks' diagnoses were invalid, the

ALJ appears to have drawn his own conclusion based upon his own understanding

ORDER - 21

of the DSM-V criteria instead of the opinion of Dr. Marks who conducted a detailed review of plaintiff's medical records, a clinical interview, and psychometric testing. *See* Tr. 21 ("the diagnoses considered in the record must include a determination that the claimant's symptoms are not caused by substance abuse."); *Aiken v. Astrue*, No. C07-5291RBL-KLS, 2008 WL 4810085, at *14 (W.D. Wash. Oct. 31, 2008) ("the ALJ is ill-equipped" to determine whether plaintiff's symptoms match or qualify him for the pain disorder diagnosis set forth in the DSM); *Ming v. Comm'r of Soc. Sec.*, No. 14-cv-14643, 2015 WL 8135807, at *2 (E.D. Mich. Dec. 8, 2015) ("Essentially the ALJ took upon the task of reviewing Plaintiff's symptoms and deciding whether to credit or discount specific opinion[s] made by the treating physician based on the DSM. In effect the ALJ's 'findings constitute a medical judgment the ALJ was not qualified to make.'"); *Maria R. v. Berryhill*, No. 1:17-cv-279, 2018 WL 4204434, at *14 (W.D.N.Y. Sept. 4, 2018) (ALJ's analysis was legally erroneous when the ALJ compared the clinical symptoms in the providers' notes with the symptoms listed in the DSM and concluded Plaintiff's depressive disorder was not consistent with the criteria from the DSM); *cf. LaPierre v. Colvin,* No. 12-cv-3099-RHW, 2014 WL 584977, at *5 (E.D. Wash. Feb. 14, 2014) (relying upon medical expert testimony rejecting diagnoses due to the failure to separate out impact of illicit drug use). As the ALJ is not qualified to render an opinion as to whether Plaintiff does or does not meet

the diagnostic criteria, the ALJ's conclusion Dr. Marks' diagnoses were "invalid" because she failed to "exclude[] the effect of alcohol" is unsupported by the record. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (an ALJ may not act as his own medical expert, since he is "simply not qualified to interpret raw medical data in functional terms"); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (hearing examiner should not go outside the record to medical textbooks to make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Here, the ALJ erred in his application of the step two analysis. The legal standard the ALJ was required to apply in reviewing Dr. Marks' opinion provides that if a claimant has a substance abuse disorder, the ALJ must not attempt to determine the impact of the claimant's addiction on his other mental impairments at step two of the initial five-step inquiry. *Bustamante*, 262 F.3d at 955 ("The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of [claimant's] alcoholism on his other mental impairments."). As SSR 13-2p further explains, "[m]any people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would

1   improve, or the extent to which it would improve, if the claimant were to stop

2   using drugs or alcohol."  As the SSR explicitly recognizes the fact medical science

3   does not currently have a method for reliably predicting the improvement of a co-

4   occurring mental disorder without substance abuse, the ALJ is required to rely on

5   evidence in the case, and not exclusively on a medical expert, to ascertain the

6   materiality of a claimant's DAA in the context of a co-occurring mental disorder.

7   *See also Hoban v. Comm'r of Soc. Sec.*, No. 3:15-cv-01786-HZ, 2016 WL

8   4059200,  *6 (D. Or. July 27, 2016)  (SSR 13-2p "makes explicit that because

9   medical science does not currently have a method for reliably predicting the

10  improvement of a co-occurring mental disorder without substance abuse, the ALJ

11  must rely on evidence in the case, and not exclusively on a medical expert, to

12  ascertain the materiality of a claimant's DAA in the context of a co-occurring

13  mental disorder.").

14      Having rejected Dr. Marks' mental health diagnoses as "invalid" at step two

15  and rejected all mental health impairments as non-medically determinable

16  impairments, no co-occurring mental health impairments were factored into the

17  ALJ's DAA materiality analysis.  The ALJ's conclusion that no valid diagnosis of

18  a co-occurring mental health impairment could have been made by Dr. Marks due

19  to the "impossible task of removing the effects of alcohol" is not only unsupported

20  by substantial evidence in the record, but as a general notion, completely contrary

ORDER - 24

to the body of DAA case law and the Commissioner's own policy guidance.[6]  *See*

*Hoban*, No. 3:15-cv-01786-HZ, 2016 WL 4059200, *6 (D. Or. July 27, 2016)

(rejecting contention mental health impairments cannot be assessed without a

period of abstinence).

      The ALJ erred by rejecting Dr. Marks' November 2015 opinion solely upon

the unsupported conclusion that her opinion was based on "invalid" psychological

diagnoses.  Accordingly, the ALJ's rejection of Dr. Marks' opinion is not

supported by substantial evidence.

            b.     Dr. Marks' April 2016 Opinion

                  i.   Consideration of Effects of Alcohol

      Like the November 2015 opinion, the ALJ assigned little weight to Dr.

Marks' April 2016 opinion because it did not "adequately consider the effects of

---

[6] The fact Dr. Marks' November 2015 opinion was rendered during a period of

ongoing substance abuse is a factor that can impact the weight of the evidence.  In

cases involving co-occurring mental disorders, documentation of a period of

abstinence provides relevant evidence for the DAA analysis, "as it should provide

information about what, if any, medical findings and impairment-related

limitations remained after the acute effects of drug and alcohol use abated."  SSR

13-2p at *12.

the claimant's substance abuse disorders in diagnosing other impairments."  Tr. 25.  Though the ALJ acknowledged the evaluation was performed at the "end of a three-month period of sobriety," Tr. 25, the ALJ deemed Dr. Marks' evaluation inadequate because: 1) she did not "provide separate analyses with and without the effects of alcohol use" and 2) the three-month period of sobriety was "not a sufficient period of abstinence to remove the effects of alcohol abuse such that the claimant's other alleged mental impairments could be properly analyzed."  Tr. 25.

First, contrary to the ALJ's assertion, the Dr. Marks did consider the effects of substance abuse.  She acknowledged that she had previously performed an evaluation of Plaintiff in 2015 and addressed Plaintiff's alcoholism, his attendance at AA, and his sobriety for a period of three months (long enough to go through hepatitis C treatment).  Tr. 374-77.  Dr. Marks noted that the significant response delay evidenced in the Trail Making Test suggested that Plaintiff's cognitive deficits "may be linked to chronic drug use and organic types of damage."  Tr. 377.  Dr. Marks also specifically opined that the assessed impairments were *not* primarily the result of alcohol or drug use within the past 60 days and would persist following 60 days of sobriety.  Tr. 378.

While the ALJ is correct that the form used by Dr. Marks does not specifically distinguish the assessment of limitations with and without the effects of substance abuse, there is no rule requiring a medical opinion that separates the

ORDER - 26

alcohol use from the remaining limitations. *Cage v. Comm'r of Social Security*,
692 F.3d 118, 126–127 (2nd Cir. 2012) (any such rule "would unnecessarily
hamper ALJs and impede the efficient disposition of applications in circumstances
that demonstrate DAA materiality in the absence of predictive opinions.")
(collecting case law). As noted in SSR 13-2p, the finding about DAA materiality,
i.e., what impairments would remain absent substance abuse and whether they
remain disabling, is an issue reserved to the Commissioner and:

> [t]herefore, we will not ask a treating source, a CE provider, a medical
> expert, or any other source for an opinion about whether DAA is material.
> We will instead ask for medical opinions about the nature, severity, and
> functional effects of a claimant's impairment(s). In cases involving physical
> impairments, we may ask for medical opinions that project the nature,
> severity, and functional effects if the claimant were to stop using drugs or
> alcohol. In cases involving mental impairment(s) we will not ask for
> projections . . .

2013 WL 621536, *8 n.19 (Feb. 20, 2013). Moreover, an ALJ could reasonably
infer from Dr. Marks' statement that Plaintiff's impairments were not the result of
alcohol or drug use and were possibly "permanent," Tr. 378, that her assessment of
limitations would remain the same with or without the effects of Plaintiff's alcohol
abuse.

Second, the ALJ rejected Dr. Marks' opinion because "[t]he record
establishes there was not a sufficient period of abstinence to remove the effects of
alcohol abuse such that [Plaintiff's] other alleged mental impairments could be
properly analyzed." Tr. 25. This reason is based upon the ALJ's erroneous finding

ORDER - 27

1  discussed above that "at least six months of sobriety is necessary for effects of

2  alcohol abuse to subside such that proper diagnoses of other impairments could be

3  made." Tr. 21.  However, Dr. Veraldi testified that "three to six months" would

4  give an "initial estimate of . . . how well he's doing." Tr. 41.  Where the ALJ's

5  materiality determination is more difficult due to limited periods of sobriety, the

6  ALJ must still "develop a full and fair record and support his conclusion with

7  substantial evidence on this point just as he would on any other."[7] *Brueggemann v.*

8  _____

9  [7] SSR 13-2p sets forth guidance regarding periods of abstinence:

10    a.  Each substance of abuse, including alcohol, has different intoxication and
         long-term physiologic effects.  In addition, there is a wide variation in the

11       duration and intensity of substance use among claimants with DAA, and
         there are wide variations in the interactions of DAA with different types

12       of physical and mental disorders.  For these reasons, we are unable to
         provide exact guidance on the length and number of periods of

13       abstinence to demonstrate whether DAA is material in every case.  In
         some cases, the acute and toxic effects of substance use or abuse may

14       subside in a matter of weeks, while in others it may take months or even
         longer to subside.  For some claimants, we will be able to make a

15       judgment about materiality based on evidence from a single, continuous
         period of abstinence, while in others we may need to consider more than

16       one period.
      b.  In all cases in which we must consider periods of abstinence, the

17       claimant should be abstinent long enough to allow the acute effects of
         drug or alcohol use to abate.  Especially in cases involving co-occurring

18       mental disorders, the documentation of a period of abstinence should
         provide information about what, if any, medical findings and

19       impairment-related limitations remained after the acute effects of drug
         and alcohol use abated.  Adjudicators may draw inferences from such

20       information based on the length of the period(s), how recently the
         period(s) occurred, and whether the severity of the co-occurring

*Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).  Here, if an evaluation of a longer

period of sobriety was necessary or would have been useful, the ALJ should have

granted a consultative psychological examination at the time of the December

hearing as Plaintiff testified he had only relapsed once (in June 2017) since March

of the same year.  Tr. 37 (describing relapse as a single event in June 2017 which

he then reported to his counselor); Tr. 386 (July 11, 2017 progress note indicating

Plaintiff reportedly relapsed "a couple weeks ago" but denied current use).

### ii. Cursory Examination and Plaintiff's Self-Report

The ALJ also rejected Dr. Marks' April 2016 opinion because her opinion

was based on "only a cursory examination" and relied "heavily on claimant reports

rather than objective evidence."  Tr. 25.

Relevant factors to evaluating any medical opinion include the amount of

relevant evidence that supports the opinion, the quality of the explanation provided

in the opinion, and the consistency of the medical opinion with the record as a

whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*,

_____

> impairment(s) increased after the period(s) of abstinence ended.  To find
> that DAA is material, we must have evidence in the case record
> demonstrating that any remaining limitations were not disabling during
> the period.

SSR 13-2P, 2013 WL 621536, at *12 (Feb. 20, 2013).

ORDER - 29

495 F.3d 625, 631 (9th Cir. 2007).  A medical opinion may be rejected by the ALJ

if it is conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas v.*

*Barnhart*, 278 F.3d 937, 957 (9th Cir. 2002).  Further, a physician's opinion may

be rejected if it is based on a claimant's subjective complaints, which were

properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

*Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*,

885 F.2d 597, 604 (9th Cir. 1989).  However, when an opinion is not more heavily

based on a patient's self-reports than on clinical observations, there is no

evidentiary basis for rejecting the opinion.  *Ghanim*, 763 F.3d at 1162.

Dr. Marks' April 2016 psychological evaluation was conducted for the

Washington State Department of Social and Health Services (DSHS).  Tr. 374.  As

part of the evaluation she performed a clinical interview, administered the Beck

Depression and Anxiety Inventories and parts A and B of the Trail Making Test,

and conducted a mental status examination evaluating Plaintiff's appearance,

speech, mood, affect, though process and content, memory, fund of knowledge,

concentration, abstract thought, and insight and judgment.  Tr. 374-80.  She also

acknowledged she had previously performed an evaluation in October 2015.  The

ALJ failed to state how this evaluation would constitute a "cursory" examination.

This reason was not a specific and legitimate reason to reject Dr. Marks' April

2016 opinion.

ORDER - 30

1  *3.  Non-Examining Psychologists*

2  Plaintiff also claims the ALJ failed to properly consider the opinions of non-

3  examining, reviewing psychologists Drs. Petaja, Robinson, and Flanagan.  Tr. 60-

4  61, 64-67, 76-77, 80-83, 381.  As set forth above, each concluded the record

5  evidence supported severe mental health impairments in addition to substance

6  abuse disorders.

7  The ALJ assigned Dr. Petaja's opinion "little weight" because it adopted Dr.

8  Marks' findings "without additional analysis."  Tr. 25.  Because the ALJ's

9  improper rejection of Dr. Marks' April 2016 opinion alone warrants merits

10  remand, the ALJ must reevaluate Dr. Petaja's opinion on remand as well.

11  At the initial and reconsideration determination levels, Dr. Robinson and Dr.

12  Flanagan concluded that in addition to substance abuse disorders, Plaintiff had a

13  severe affective disorder and anxiety disorder.  Tr. 60, 76.  Both sources assessed a

14  number of moderate limitations in understanding and memory, sustained

15  concentration and persistence, social interaction, and adaption.  Tr. 64-67, 80-83.

16  The ALJ also assigned "no weight" to these opinions citing the same reasons he

17  improperly rejected the opinions of Dr. Marks: they "did not separate the effects of

18  the claimant's substance use disorders," they relied upon invalid diagnoses, and all

19  mental functional limitations assigned "must necessarily be caused by alcohol

20  use."  Tr. 25.  The Court has previously explained the error in these reasons in

ORDER - 31

connection with the analysis of Dr. Marks' opinion above. Furthermore, the ALJ's

statement that these opinions were given little weight "with regard to the

claimant's functional abilities without the presence of substance use disorders,"

confirms the ALJ conflated the DAA analysis, improperly attempting to separate

out the impact of substance abuse as part of the initial five-step sequential

evaluation contrary to the requirements of *Bustamante*, 262 F.2d at 955.

### 4. ARNP Rogers

Finally, Plaintiff claims the ALJ improperly gave ARNP Rogers' 2017

opinion little weight. Tr. 24. Because ARNP Rogers was an "other source," the

ALJ was required to provide germane reasons to discount her opinion. *Dodrill v.

Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). However, as noted by Defendant, ECF

No. 17 at 5, under the regulations in effect for Plaintiff's claim, evidence of a nurse

practitioner, such as ARNP Rogers, alone was insufficient to establish the

existence of a medically determinable impairment. Despite Ms. Rogers' status as a

non-acceptable medical source, the Social Security Administration (SSA), in SSR

06-03p, available at 2006 WL 2329939, recognized that "[w]ith the growth of

managed health care in recent years and the emphasis on containing medical costs,

medical sources who are not 'acceptable medical sources,' such as nurse

practitioners, physician assistants, and licensed clinical social workers, have

increasingly assumed a greater percentage of the treatment and evaluation

ORDER - 32

1    functions previously handled primarily by physicians and psychologists."  2006

2    WL 2329939, at *32.  The SSA recognized that "[o]pinions from these medical

3    sources, who are not technically deemed 'acceptable medical sources' under our

4    rules, are important and should be evaluated on key issues such as impairment

5    severity and functional effects, along with the other relevant evidence in the file."

6    *Id*.

7         Given the ALJ's improper rejection of the acceptable medical sources

8    impacts the ALJ's step two determination and merits remand, ARNP Rogers'

9    opinion must also be reevaluated on remand.  Notably, the ALJ's rejection of

10   ARNP Rogers opinion largely ignores her assessment of Plaintiff's mental health

11   impairments and cites the inconsistency of Plaintiff's daily activity "with the

12   residual functional capacity assigned" although the ALJ never determined an RFC.

13   Tr. 24.

14   **B. Step Two**

15        Plaintiff contends the ALJ erred in failing to find any severe physical or

16   mental impairments other than substance use and discontinuing the sequential

17   evaluation.  ECF No. 16 at 15-18.

18        At step two of the sequential process, the ALJ must determine whether the

19   claimant suffers from a "severe" impairment, i.e., one that significantly limits her

20   physical or mental ability to do basic work activities.  20 C.F.R. §

ORDER - 33

404.1520(a)(4)(ii); 20 C.F.R. § 404.1522.  The ALJ must first determine whether

he or she has a medically determinable physical or mental impairment.  20 C.F.R.

§ 404.1521.  A medically determinable impairment "must result from anatomical,

physiological, or psychological abnormalities that can be shown by medically

acceptable clinical or laboratory diagnostic techniques."  20 C.F.R. § 404.1521.

Therefore, a physical or mental impairment must be established by objective

medical evidence from an acceptable medical source."  *Id.*  When considering

medically determinable mental impairments, the ALJ must first determine whether

such an impairment exists based on the claimant's "symptoms, signs, and

laboratory findings."  20 C.F.R. § 404.1520a(b)(1).  A claimant's "statement of

symptoms, a diagnosis, or a medical opinion" are not enough to establish a

medically determinable impairment.  20 C.F.R. § 404.1521; *see also* SSR 96-4p.

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

work…."  SSR 85-28 at *3.  Similarly, an impairment is not severe if it does not

significantly limit a claimant's physical or mental ability to do basic work

activities; which include walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling; seeing, hearing, and speaking; understanding,

carrying out and remembering simple instructions; responding appropriately to

ORDER - 34

1  supervision, coworkers and usual work situations; and dealing with changes in a

2  routine work setting.  20 C.F.R. § 404.1522; SSR 85-28.[8]

3       When considering the severity of mental impairments, the ALJ considers the

4  "degree of functional limitation resulting from [the claimant's] impairments" in

5  four broad areas of functioning: activities of daily living; social functioning;

6  concentration, persistence or pace; and episodes of decompensation.  20 C.F.R.

7  Part 404, Subpt. P, App. 1, at 12.00(C).  Functional limitation is measured as

8  "none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If

9  limitation is found to be "none" or "mild," the impairment is generally considered

10  to not be severe.  20 C.F.R. § 404.1520a(d)(1).

11       Step two is "a de minimus screening device [used] to dispose of groundless

12  claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

13  our normal standard of review to the requirements of step two, [the Court] must

14  determine whether the ALJ had substantial evidence to find that the medical

15  evidence clearly established that [Plaintiff] did not have a medically severe

16

17

18  _____

19  [8] The Supreme Court upheld the validity of the Commissioner's severity

20  regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54
    (1987).

ORDER - 35

impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

    *1.  Mental Impairments*

      Plaintiff contends the ALJ erred at step two by finding generalized anxiety disorder, depressive disorder, social anxiety disorder, and attention deficit hyperactivity disorder (ADHD) non-medically determinable impairments.  ECF No. 16 at 17.  The ALJ concluded the because "the effects of alcohol use have not been separated by any medical source," the diagnoses of mental health conditions were "invalid" under the DSM-V, and therefore not medically determinable.  Tr. 21.  As discussed in more detail above, the ALJ's analysis is in error as the ALJ is not qualified to render his own expert testimony rejecting mental health impairments listed and diagnosed by every mental health provider in the record. The ALJ is bound by the Ninth Circuit's specific procedure that must be applied in analyzing cases involving substance abuse which requires the ALJ conduct the five-step inquiry *without* attempting to determining the impact of Plaintiff's alcoholism on his other mental health impairments.  *Bustamante*, 262 F.3d at 956. SSR 13-2p indicates that the SSA will not ask any source for projections involving mental health impairments or for an opinion about whether DAA is material.  2013 WL 621536, *8 n.19 (Feb. 20, 2013).  When it is not possible for the ALJ to

1   segregate limitations caused by substance abuse as opposed to other mental

2   disorders a finding of not material is appropriate.  *Id.*

3        SSR 13-2p warns adjudicators to "be cautious" when making a finding that a

4   claimant's only severe medically determinable impairment is substance use

5   disorder "because there is a high prevalence of physical and co-occurring mental

6   impairments associated with long-term drug and alcohol use."  2013 WL 621536,

7   *8 n.11 (Feb. 20, 2013).  This caution was not exercised here.  All of the medical

8   sources of record – treating, examining, and non-examining-- determined Plaintiff

9   had severe mental impairments in addition to substance use disorder; none

10  concluded these diagnoses were invalid.  Even the ALJ acknowledged Plaintiff

11  was treated for depression and anxiety during a period of sobriety.  Tr. 21.  The

12  ALJ's sweeping conclusion that all of mental health diagnoses of record were

13  "invalid" and therefore Plaintiff's mental health conditions were not medically

14  determinable, is unsupported and arbitrary.  The ALJ's application of the incorrect

15  standards in evaluating Plaintiff's mental health impairments at step two

16  constitutes reversible error.

17        *2. Physical Impairments*

18        Plaintiff contends the ALJ erred in finding all of Plaintiff's physical

19  impairments non-severe.  ECF No. 16 at 17.  Plaintiff contends hepatitis C,

20  abnormal liver function tests, and hepatic encephalopathy, limit him to sedentary

ORDER - 37

work and thus constitute severe impairments.  ECF No. 16 at 17; ECF No. 18 at 8.

Plaintiff's contention regarding his physical impairments is unaccompanied by any

developed argumentation.  *Id.*  Although ARNP Rogers opined Plaintiff was

limited to sedentary work, Tr. 373, 450, the ALJ rejected her opinions as

inconsistent with the record evidence noting that Plaintiff did not allege and the

record did not support "significant physical limitations."  Tr. 24.  The ALJ found

that Plaintiff's hepatitis C was put in remission by treatment and his liver enzymes

normalized with periods of abstinence.  Tr. 21 (citing Tr. 404, 458).  Elsewhere in

the decision, the ALJ also noted Plaintiff's normal physical examination findings

and ability to independently and adequately perform activities of self-care and

daily living.  Tr. 23 (citing Tr. 196, 292-93, 329, 344, 366, 428, 474, 479, 482, 488,

493).  As Plaintiff did not address any of the ALJ's reasons or cited evidence for

concluding Plaintiff's physical impairments were non-severe, Plaintiff has waived

this argument.  *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th

Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson*

*v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived.  It is not sufficient for a party to mention a possible argument

in a most skeletal way, leaving the court to . . . put flesh on its bones."); *Carmickle*

1  *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining

2  Court may decline to address on the merits issues not argued with specificity).

3  **C. Harmful Error**

4      The ALJ's improper step two determination and rejection of all medical

5  source opinions regarding Plaintiff's mental health impairments is not

6  inconsequential in this DAA case.  *See Ingram v. Barnhart*, 72 Fed. App'x 631, *5

7  (9th Cir. 2003) (awarding benefits after finding substantial evidence did not

8  support the ALJ's DAA materiality finding where the ALJ improperly credited the

9  testifying medical expert over the examining physicians' opinions, leading to error

10 in the identification of the claimant's severe impairments).  In DAA cases, "each

11 and every impairment must be considered to determine if the combination of the

12 remaining impairments is severe" and "if a severe impairment is omitted at step

13 two, it is impossible to perform the proper analysis for differentiating the effects of

14 DAA from the effects of a claimant's other impairments."  *Id.* at *3.  As the ALJ

15 did not properly assess the medical evidence, the Court cannot conclude that the

16 ALJ accounted for all of Plaintiff's impairments and limitations during subsequent

17 steps of the sequential evaluation process performed as part of the DAA materiality

18 analysis.  *See Smolen*, 80 F.3d at 1290 ("having found [the plaintiff] to suffer from

19 only one 'severe' impairment at step two, the ALJ necessarily failed to consider at

20 step five how the combination of her other impairments ... affected her residual

ORDER - 39

functional capacity to perform work"); *Hill*, 698 F.3d at 1161 (finding that because "the ALJ excluded panic disorder from [the claimant's] list of impairments and instead characterized her diagnoses as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record").

**D. Other Challenges**

Plaintiff raises other challenges to the ALJ's: 1) failure to conduct an analysis at steps three through five of the initial sequential evaluation, 2) evaluation of Plaintiff's symptom claims, 3) evaluation of the non-medical evidence, including vocational rehabilitation counselor Adriana Lozana; 4) duty to develop the record based on Dr. Veraldi's concern regarding the presence of an undiagnosed neurocognitive disorder; and 5) DAA analysis.  ECF No. 16 at 14-20.  However, the findings at step two in the sequential evaluation in this case inherently depend on the ALJ's findings regarding the medically determinable and severe impairments at step two.  Because this case is remanded for the ALJ to conduct a new sequential analysis, the Court declines to address Plaintiff's other challenges here.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 16 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three credit-as-true conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under the credit-as-true rule, the court may remand for an award of benefits if 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment

ORDER - 41

1    of benefits if "the record as a whole creates serious doubt that a claimant is, in fact,

2    disabled." *Garrison*, 759 F.3d at 1021.

3         Here, the Court finds that further development of the record and

4    administrative proceedings will serve a useful purpose because the Court is unable

5    to meaningfully assess the ALJ's DAA analysis without a proper initial sequential

6    evaluation.  Remand is necessary to enable the ALJ to consider all of the evidence

7    of Plaintiff's conditions and the medical opinions suggesting Plaintiff's symptoms

8    would exist regardless of substance abuse.  Factual issues exist as to the nature of

9    Plaintiff's substance abuse and how it relates to his other conditions.  *See* 20

10   C.F.R. § 404.1535; *Parra*, 481 F.3d at 748.  Therefore, remand for further

11   proceedings, rather than an award of benefits, is appropriate.  *See Treichler*, 775

12   F.3d at 1101 ("Where there is conflicting evidence, and not all essential factual

13   issues have been resolved, a remand for an award of benefits is inappropriate.").

14        On remand, the ALJ is directed to conduct the sequential evaluation process

15   anew and reevaluate whether Plaintiff's DAA is a material factor contributing to

16   his disability.  Before proceeding to the DAA analysis, the ALJ must conduct the

17   regular five-step disability inquiry to determine if a claimant is disabled, including

18   as part of this inquiry the impact of any substance use disorders.  *Bustamante*, 262

19   F.2d at 955.  The ALJ may not skip any step of the initial disability determination.

20   It is only if the ALJ finds Plaintiff disabled and there is evidence of substance use,

ORDER - 42

that the ALJ proceeds under 20 C.F.R. § 404.1535 for the DAA evaluation process.

If the DAA analysis involves co-occurring mental impairments, while an ALJ may seek the assistance of medical experts, the ALJ may not "rely exclusively on medical expertise and the nature of a claimant's mental disorder" to support a finding of DAA materiality.  SSR 13-2p, 2013 WL 621536, at *9; *see also Lester Z. v. Comm'r of Soc. Sec.*, No. 1:18-cv-3099- RMP, 2019 WL 7819479, at *6 (E.D. Wash. Apr. 22, 2019) (citing SSR 13-2p and noting "an ALJ may not rely exclusively on a medical expert's testimony and the nature of claimant's mental disorder to determine that drug and alcohol abuse is material."); *Kindrick v. Comm'r of Soc. Sec.*, 1:16-cv-03195-FVS, 2018 WL 3026070, at *6 (E.D. Wash. Apr. 11, 2018) ("[T]he ALJ supported the DAA analysis with substantial evidence from Plaintiff's lengthy period of sobriety, including: objective medical evidence; Plaintiff's 'treatment course and daily activities;' and Plaintiff's own testimony, including her ability to work full-time with certain restrictions."); *Hoban*, No. 3:15-cv-01786-HZ, 2016 WL 4059200,  *6 (D. Or. July 27, 2016)  (SSR 13-2p "makes explicit that because medical science does not currently have a method for reliably predicting the improvement of a co-occurring mental disorder without substance abuse, the ALJ must rely on evidence in the case, and not exclusively on a medical expert, to ascertain the materiality of a claimant's DAA in the context of a co-occurring mental disorder.").

ORDER - 43

Furthermore, DAA is not material "if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." SSR 13-2p, 2013 WL 621536, at *9. Also, "[i]f the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorders," then the ALJ should find that the DAA is not material. *Id*. at *12.

Plaintiff should be afforded an opportunity to supplement the medical evidence to address his contention that his physical and mental impairments would exist independent of any substance abuse. The ALJ should develop the record as necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social

ORDER - 44

1 Security for further proceedings consistent with this recommendation pursuant to

2 sentence four of 42 U.S.C. § 405(g).

3      The District Court Executive is directed to file this Order, provide copies to

4 counsel, and **CLOSE THE FILE**.

5      DATED August 18, 2020.

6                  _s/Mary K. Dimke_

                 MARY K. DIMKE

7      UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 45